James H. Park, State Bar No. 193203
Law Offices of James H. Park, P.C.
P.O. Box 2803
Fullerton, California 92837
Telephone: (213) 365-6120
Facsimile:(213) 341-2312
Email: Counsel@Jamespark.com

Attorney forPlaintiff Pro-Com Products, Inc.

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

PRO-COMPRODUCTS, INC., *a California corporation*,

Plaintiff,

v.

OPTIMAL SANTE, LLC, *a North Carolina limited liability company*, and ROBERT SHAAR, *an individual*.

Defendants.

Case No.

**COMPLAINT FOR DAMAGES:**

**(1) BREACH OFWRITTEN CONTRACT;**
**(2) BREACH OF CONTRACT;**
**(3) ENFORCEMENT OFPERSONAL GUARANTEE;**
**(4) QUANTUM VALEBANT;**
**(5) OPEN BOOK ACCOUNT;**
**(6) ACCOUNT STATED;**
**(7) ACCOUNT STATED;**
**(8) GOODS SOLD AND DELIVERED**
**(9) GOODS SOLD AND DELIVERED**

JURY TRIAL DEMANDED

Plaintiff Pro-Com Products, Inc. ("Pro-Com"), for its complaint against defendants Optimal Santé, LLC ("Optimal Santé") and Robert Shaar ("Mr. Shaar") (collectively, "Defendants"), alleges as follows:

**<u>THE PARTIES</u>**

1. Plaintiff Pro-Com is a California corporation with its principal place of business at1250 Bixby Drive, City of Industry, California 91745.

2. Defendant Optimal Santé is a North Carolina limited liability company with its principal place of business at924 Evening Snow Street, Wake Forest, North Carolina 27587.

3. Defendant Robert Shaar is an individual and sole Memberand Manager of Optimal Living and Optimal Santé, as well as the Chief Executive Officer of Optimal Living. Mr. Shaar is also the registered agent of both Optimal Living and Optimal Santé, with a business address of 924 Evening Snow Street, Wake Forest, North Carolina 27587.

4. Optimal Santé and Mr. Shaar have each entered into agreements with Pro-Com in this District, obtained the benefits of doing business with Pro-Com here, and agreed to be subject to the jurisdiction of this Court.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over this action under 28 U.S.C.§ 1332(a)(1) because there is complete diversity between the parties and the amountin controversy, exclusive of costs and interest, exceeds $75,000.00. Defendants refuse to pay at least $3,013,270.00 owed to Pro-Com under multiple agreements.

6. Venue is proper in this district because Pro-Com resides here, the contract was entered into in this district, payment was to be made in this district, the substantial part of the events or omissions giving rise to the claims alleged herein occurred in this district, the injuries and damages alleged were suffered in this district, and because the Promissory Note and Personal Guarantee, specifies that any dispute arising out of or relating to the Promissory Note may be brought in this district.

7. Plaintiff is informed and believes, and thereon alleges, that at all times relevant herein, Defendants and each defendant were each other's agents, employees, partners, co-venturers, or representatives.

8. Plaintiff is informed and believes, and thereon alleges, that at all times relevant herein, in performing the acts or omissions herein alleged, that defendants and each defendant were acting within the scope of said agency, employment, partnership, co-venture, or representation.

**COMMON FACTUAL ALLEGATIONS**

9. This is a case about a purchaser that (i) agreed to purchase 3-ply disposable masks from Pro-Com, (ii) agreed to pay Pro-Com for said masks, (iii) ordered the masks for delivery from Pro-Com, (iv) partially pre-paid Pro-Com for the masks, (v) had its principal sign a personal guarantee for the total amount of the mask purchase contract, (vi) received the specific masks that were ordered, and (vii) acknowledged the obligation to pay Pro-Com for the masks. The purchaser and its personal guarantor have now defaulted on their obligations and have failed to pay the full invoiced price for the goods received.

10. On or about April 30, 2020, Optimal Santé completed a purchase order with Pro-Com for 11,400,000 3-ply disposable masks (the "masks") at a price of $6,178,800.00. (*See*Exhibit A, hereafter referred to as the "PO 20428").

11. On or about June 1, 2020, Pro-Com and Optimal Santéincorporated the April 30 Purchase Order into a memorialized written contract for the purchase of the masks. (*See*Exhibit B, hereafter referred to as the "Promissory Note").

12. Therein, the total number of masks and the price per unit were adjusted; the contract specified Pro-Com deliver a total of 10,720,000 masks at a rate of $0.58 per unit for a total price of $6,217,600.

13. The Promissory Note identified 5,680,000 masks as having been fulfilled under orders from May 23, 2020 through May 29, 2020.

14. Moreover, as part of Promissory Note, Mr.Shaar personally guaranteed the contractual obligations of Optimal Santé in a Personal Guarantee

that was attached to and incorporated into the Promissory Note. (*See*Exhibit C, the "Personal Guarantee").

15. Per the terms of the Promissory Note, Optimal Santé and Mr.Shaar(individually and as an authorized agent for Optimal Santé) promised to pay $6,217,600 for the masks, noting that "[a]ll orders are non-cancellable and irrevocable purchase orders". (*Id.*).

16. Per the terms of the Promissory Note, interest at the rate of 29% per annum on the masks delivered begins ten days after the date of release of masks in the condition required to Optimal Santé from Pro-Com (the "Due Date"). (*See* Exhibit B).

17. Per the terms of the Promissory Note, upon default in making payments on the Due Date, Optimal Santé agreed to pay all reasonable legal fees and costs of collection of the Promissory Note.

18. Per the terms of the Promissory Note, Pro-Com was "responsible to ship out [the masks] pursuant to and match with approved tested samples sent tothe government agency."

19. The "government agency" referenced therein was North Carolina Emergency Management ("NCEM"), to whom the masks were to be sent per Optimal Santé's contract with the government -- on April 27, 2020, NCEM issued an emergency purchase order for 12,000,000 masks from Optimal Santé. (*See*Exhibit D (NCEM Emergency Purchase Order COV240351)).

20. From May 7, 2020 through June 3, 2020, Pro-Com fulfilled its obligations under the Promissory Note and PO 20428, making nine shipments totaling 11,400,000 masks, as follows:

a. On May 7, 2020, Pro-Com issued Invoice 2907834 for a shipment of 300,000 masks (12,000 packages of 25 masks) to be delivered to NCEM's warehouse in Mocksville, North Carolina and billed to Mr. Shaar and Optimal Santé for a purchase price of $164,400 ($162,600

for the masks and $1,800 in shipping charges) (*see* Exhibit E (Shipping package for Invoice 2907834, including Pro-Com's invoice, the shipping invoice, and the bill of lading);

b. On May 7, 2020, Pro-Com issued Invoice 2908395 for a shipment of 380,000 masks (15,200 packages of 25 masks) to be delivered to NCEM's warehouse in Mocksville, North Carolina and billed to Mr. Shaar and Optimal Santé for a purchase price of $210,360 ($205,960 for the masks and $4,400 in shipping charges) (*see* Exhibit F (Shipping package for Invoice 2908395, including Pro-Com's invoice, the shipping invoice, and the bill of lading);

c. On May 22, 2020, Pro-Com issued Invoice 2937361 for a shipment of 2,160,000 masks (86,400 packages of 25 masks) to be delivered to NCEM's warehouse in Mocksville, North Carolina and billed to Mr. Shaar and Optimal Santé for a purchase price of $1,264,300 ($1,252,800 for the masks and $11,500 in shipping charges) (*see* Exhibit G (Shipping package for Invoice 2937361, including Pro-Com's invoice, the shipping invoices, and the bills of lading);

d. On May 29, 2020, Pro-Com issued Invoice 2941588 for a shipment of 1,248,000 masks (49,920 packages of 25 masks) to be delivered to NCEM's warehouse in Mocksville, North Carolina and billed to Mr. Shaar and Optimal Santé for a purchase price of $730,790 ($723,840 for the masks and $6,950 in shipping charges) (*see* Exhibit H (Shipping package for Invoice 2941588, including Pro-Com's invoice, the shipping invoice, and the bill of lading);

e. On May 29, 2020, Pro-Com issued Invoice 2941622 for a shipment of 2,272,000 masks (60,000 packages of 10 masks, and 66,880 packages of 25 masks) to be delivered to NCEM's warehouse in Mocksville, North Carolina and billed to Mr. Shaar and Optimal Santé for a

purchase price of $1,331,360 ($1,317,760 for the masks and $13,600 in shipping charges) (*see*Exhibit I (Shipping package for Invoice 2941622, including Pro-Com's invoice, the shipping invoices, and the bills of lading);

f. On June 2, 2020, Pro-Com issued Invoice 2946486 for a shipment of 1,248,000 masks (49,920 packages of 25 masks) to be delivered to NCEM's warehouse in Mocksville, North Carolina and billed to Mr. Shaar and Optimal Santé for a purchase price of $731,090 ($723,840 for the masks and $7,250 in shipping charges) (*see*Exhibit J (Shipping package for Invoice 2946486, including Pro-Com's invoice, the shipping invoice, and the bill of lading);

g. On June 2, 2020, Pro-Com issued Invoice 2946219 for a shipment of 1,248,000 masks (49,920 packages of 25 masks) to be delivered to NCEM's warehouse in Mocksville, North Carolina and billed to Mr. Shaar and Optimal Santé for a purchase price of $729,840 ($723,840 for the masks and $6,000 in shipping charges) (*see*Exhibit K (Shipping package for Invoice 2946219, including Pro-Com's invoice, the shipping invoice, and the bill of lading)

h. On June 3, 2020, Pro-Com issued Invoice 2948808 for a shipment of 1,296,000 masks (51,840 packages of 25 masks) to be delivered to NCEM's warehouse in Mocksville, North Carolina and billed to Mr. Shaar and Optimal Santé for a purchase price of $758,080 ($751,680 for the masks and $6,400 in shipping charges) (*see*Exhibit L (Shipping package for Invoice 2948808, including Pro-Com's invoice, the shipping invoice, and the bill of lading); and

i. On June 3, 2020, Pro-Com issued Invoice 2948809 for a shipment of 1,248,000 masks (49,920 packages of 25 masks) to be delivered to NCEM's warehouse in Mocksville, North Carolina and billed to Mr.

Shaar and Optimal Santé for a purchase price of $735,233.10 ($723,840 for the masks and $11,393.10 in shipping charges) (*see*Exhibit M (Shipping package for Invoice 2948809, including Pro-Com's invoice, the shipping invoices, and the bills of lading).

21. The shipments for Invoices 2907834, 2908395, 2937361, 2941588, 2941622, 2946486, 2946219, 2948808, and 2948809 were all timely delivered to NCEM with conforming goods.

22. Pursuant to the terms of the contract the Due Date of payment for each Invoice was as follows (*see* Exhibits E-M):

a. For Invoice 2907834, payment of $164,400 was due May 14, 2020

b. For Invoice 2908395, payment of $210,360 was due May 14, 2020;

c. For Invoice 2937361, payment of $1,264,300 was due May 29, 2020;

d. For Invoice 2941588, payment of $730,790 was due June 5, 2020;

e. For Invoice 2941622, payment of $1,331,360 was due June 5, 2020;

f. For Invoice 2946486, payment of $731,090 was due June 9, 2020;

g. For Invoice 2946219, payment of $729,840 was due June 9, 2020;

h. For Invoice 2948808, payment of $758,080 was due June 10, 2020;

i. For Invoice 2948809, payment of $735,233.10 was due June 10, 2020;

23. For Invoice 2907834, Pro-Com received timely payment in full from Optimal Santé.

24. However, for Invoices 2908395, 2937361, 2941588, 2941622, 2946486, 2946219, 2948808, 2948809 and 2907834, payment was either late and thus incurred interest charges, or was not received in full (if, at all) and thus incurred more interest charges as well.

25. Specifically:

a. For Invoice 2908395, Optimal Santémade a payment of $195,600 on May 5, 2020, and then made a second payment of $14,760 on June 12,

2020, thus incurring interest charges of 29% per annum on $14,760 from May 15, 2020 through June 12, 2020, totaling $340.09;

b. For Invoice 2937361, Optimal Santémade a payment of $1,264,300 on June 12, 2020, thus incurring interest charges of 29% per annum on $1,264,300 from May 30, 2020 through June 12, 2020, totaling $14,063.17.

c. For Invoice 2941588, Optimal Santémade a payment of $730,790 on June 12, 2020, thus incurring interest charges of 29% per annum on $730,790 from June 6, 2020 through June 12, 2020, totaling $4,064.39.

d. For Invoice 2941622, Optimal Santémade a payment of $159,550 on June 12, 2020, made a payment of $650,000 on July 23, 2020, and made a payment of $521,810 on July 24, 2020, thus incurring interest charges of 29% per annum on: (1) $159,550 from June 6, 2020 through June 12, 2020, totaling $887.36; (2) $650,000 from June 6, 2020 through July 23, 2020, totaling $24,789.04; and (3) $521,810from June 6, 2020 through July 24, 2020, totaling $20,314.85.

e. For Invoice 2946486, Optimal Santémade a payment of $730,090 on July 24, 2020, thus incurring interest charges of 29% per annum on $730,090 from June 10, 2020 through July 24, 2020, totaling $26,138.97.

f. For Invoice 2946219, Optimal Santémade a payment of $354,440 on July 24, 2020, thus incurring interest charges of 29% per annum on $354,440 from June 10, 2020 through July 24, 2020, totaling $12,672.44.

g. For Invoice 2946219, Optimal Santé did not make any payment on the remaining balance of $375,400, which has accrued interest from June

10, 2020 through the present, totaling $21,131.55 as of August 19, 2020.

h. For Invoice 2948808, Optimal Santé did not make any payment on the balance of $758,080, which has accrued interest from June 11, 2020 through the present, totaling $41,805.76 as of August 19, 2020.

i. For Invoice 2907834, Optimal Santé did not make any payment on the balance of $735,233.10, which has accrued interest from June 11, 2020 through the present, totaling $40,632.81 as of August 19, 2020.

26. All interest charges incurred by Optimal Santé remain unpaid, as do the above-mentioned principal amounts that were unpaid.

27. When Optimal Santé was awarded the contract with NCEM, Pro-Com and Optimal Santé entered into an escrow agreement (hereafter, the "Escrow Agreement", attached as Exhibit N) with White Oak Business Capital, Inc. ("WOBC"), whereby WOBC, on behalf of Pro-Com and Optimal Santé, escrowed and disbursed funds received as payment from NCEM as payment for invoices submitted by Optimal Santé to NCEM.

28. The Escrow Agreement states that all fees and costs are to be paid for by Pro-Com, unless otherwise agreed to between Pro-Com and Optimal Santé.

29. On [insert date], Optimal Santé and Pro-Com agreed in writing that Optimal Santé shall be responsible for all escrow fees and costs, including the $25,000 initial escrow agent fee paid to WOBC by Pro-Com.

30. To date, however, Optimal Santé has not reimbursed Pro-Com for the $25,000 initial escrow agent fee.

31. Moreover, Pro-Com and Optimal Santé agreed that Optimal Santé shall be responsible for all attorney's fees charged by WBOC's counsel under the Escrow Agreement.

32. On May 28, 2020, Mandelbaum Salsburg P.C. issued a bill under the Escrow Agreement for fees totaling $4,170. (Exhibit O).

33. To date, Optimal Santé has not reimbursed Pro-Com for the payment of those fees.

34. On April 15, 2020, Optimal Santé issued a separate purchase order to Pro-Com, ordering 1,000,000 KN95 masks (the "N95 Masks") at a price of $2.25 per mask, totaling $2,250,000.

35. On April 20, 2020 Optimal Santé made payment of $1,125,000 to Pro-Com for the N95 Masks.

36. Pro-Com fulfilled its obligations under this specific contract and delivered 1,000,000 conforming N95 Masks to Optimal Santé.

37. However, to date, Optimal Santé has not paid the remaining $1,125,000 owed to Pro-Com under this contract.

**FIRST CLAIM FOR RELIEF**

**(Breach of Contract against Optimal Santé and Mr. Shaar)**

38. Pro-Com refers to and incorporates paragraphs 1 through37, inclusive, hereinabove, as if fully set forth here at, *seriatim*.

39. In June of 2020, Pro-Com entered into a written agreement with Optimal Santé and Mr. Shaar entitled as the Promissory Note, in which, among other things, Pro-Com agreed to grant credit to Optimal Santé in connection with Pro-Com's sale of masks to Optimal Santé.

40. In the Promissory Note, Optimal Santé and Mr. Shaar also agreed that delinquent accounts -- those not paid in full within ten days of release of the masks, i.e., the Due Date -- would be subject to interest at the rate of 29% per annum.

41. The Promissory Note constitutes a valid, binding and enforceable contract.

42. Defendants failed to pay the full amount for the masks and the sum of $1,863.270 remains unpaid.

43. Pro-Com has fully performed its obligations under the Promissory Note, except for those obligations, if any, excused by Defendants' breach.

44. Although demand has been made, Defendantshave failed, neglected and refused to pay to Pro-Com the said amount due, in breach of the parties' agreement.

45. As a result of Defendants' breach of the Promissory Note, Pro-Com has been damaged in the sum of $1,863,270, together with interest accruing at 29% per annum on late and unmade payments.

46. As a result of Defendants' breach of the Promissory Note, Pro-Comhad to hire Law Offices of James H. Park, P.C. and has incurred and will incur attorney's fees. Since the Promissory Note provides for prevailing party's recovery of legal fees and costs of collection under the Promissory Note, Pro-Com is entitled to recovery of its attorney's fees.

**SECOND CLAIM FOR RELIEF**

**(Breach of Contract against Optimal Santé)**

47. Pro-Com refers to and incorporates paragraphs 1 through37, inclusive, hereinabove, as if fully set forth here at, *seriatim*.

48. In April of 2020, Pro-Com entered into a written agreement with Optimal Santéfor the purchase of N95 Masks, in which, among other things, Pro-Com agreed to deliver 1,000,000 N95 Masks to Optimal Santé in exchange for $2,250,000 (the "N95 Contract").

49. In April of 2020, Pro-Com fulfilled its obligations under the N95 Contract and delivered the N95 Masks to Optimal Santé.

50. On April 20, 2020, Optimal Santémade payment of $1,125,000 to Pro-Com for the N95 Masks.

51. Although demand has been made, Optimal Santéhas failed, neglected and refused to pay to Pro-Com the full amount due, in breach of the parties' agreement.

52. As a result of Defendants' breach of the Promissory Note, Pro-Com has been damaged in the sum of $1,125,000

**THIRD CLAIM FOR RELIEF**

**(Enforcement of Personal Guarantee against Mr. Shaar)**

53. Pro-Com refers to and incorporates paragraphs 1 through37, inclusive, hereinabove, as if fully set forth here at, *seriatim*.

54. In connection with obtaining credit for the purchase of masks from Pro-Com, Mr. Shaar duly executed and delivered a written Personal Guarantee to Pro-Com.

55. Under the Personal Guarantee, Mr. Shaarirrevocably and continuously guaranteed payment for the masks in case of Optimal Santé's default in payment and waived notice of default or non-payment.

56. As alleged above, Optimal Santéfailed to pay the full amount for the masks and the sum of $1,863,270 remains unpaid, together with interest accruing at 29% per annum on late and unmade payments.

57. Mr. Shaaris now in default and breach of the Personal Guarantee by failing to pay the said amount. There remains an outstanding principal balance of $1,863,270, together with interest accruing at 29% per annum on late and unmade payments.

58. As a result of Mr. Shaar's breach of the Personal Guarantee, Pro-Comhad to hire Law Offices of James H. Park, P.C. and has incurred and will incur attorney's fees. Since the Personal Guaranteeprovides for prevailing party's recovery of legal fees and costs of collection under the Personal Guarantee, Pro-Com is entitled to recovery of its attorney's fees.

**FOURTH CLAIM FOR RELIEF**

**(Quantum Valebant against Optimal Santé and Mr. Shaar)**

59. Pro-Com refers to and incorporates paragraphs 1 through37, inclusive, hereinabove, as if fully set forth here at, *seriatim*.

60. Within four (4) years last past, at Defendants, and each of them, became indebted to Pro-Com in the sum of $2,988,270 under the obligations alleged herein (per the Promissory Note and the N95 Contract), and for which Defendants agreed to pay. The reasonable value of the said obligations was, and is, the sum of $2,988,270.

61. No part of said sum has been paid, although demand therefor has been made, and there is now due, owing and unpaid from said Defendants, and each of them, the above stated sum.

**FIFTH CLAIM FOR RELIEF**

**(Open Book Account against Optimal Santé and Mr. Shaar)**

62. Pro-Com refers to and incorporates paragraphs 1 through37, inclusive, hereinabove, as if fully set forth here at, *seriatim*.

63. The Promissory Note, Purchase Orders and Invoices set forth above constitute a book account as defined in Section 337(a) of the California Code of Civil Procedure, and, as referenced in Section 1717.5 of the California Civil Code.

64. Within the last four years, Defendants and each of them became indebted to Pro-Com on an open book account.

65. The balance thereof presently due and owing, payment of which has not been made by Defendants despite Pro-Com's demands therefor, is the amount of $1,863,270, plus interest, costs, and attorneys' fees.

**SIXTH CLAIM FOR RELIEF**

**(Account Stated against Optimal Santé and Mr. Shaar)**

66. Pro-Com refers to and incorporates paragraphs 1 through37, inclusive, hereinabove, as if fully set forth here at, *seriatim*.

67. Within the last four years, an account was stated between Defendants and eachDefendant, on the one hand, and Pro-Com, on the other hand in the principal amount of$1,863.270.00.

68. Although demanded by Pro-Com from Defendants and each Defendant, thisbalance remains unpaid.

69. The balance thereof presently due and owing, payment of which has not been made by Defendants despite Pro-Com's demands therefor, is the amount of $1,863,270, plus interest, costs, and attorneys' fees.

**SEVENTH CLAIM FOR RELIEF**

**(Account Stated against Optimal Santé and Mr. Shaar)**

70. Pro-Com refers to and incorporates paragraphs 1 through37, inclusive, hereinabove, as if fully set forth here at, *seriatim*.

71. Within the last four years, an account was stated between Defendants and eachDefendant, on the one hand, and Pro-Com, on the other hand in the principal amount of$1,125,000.

72. Although demanded by Pro-Com from Defendants and each Defendant, thisbalance remains unpaid.

73. The balance thereof presently due and owing, payment of which has not been made by Defendants despite Pro-Com's demands therefor, is the amount of $1,125,000, plus interest, costs, and attorneys' fees.

**EIGHTH CLAIM FOR RELIEF**

**(Goods Sold and Delivered against Optimal Santé and Mr. Shaar)**

74. Pro-Com refers to and incorporates paragraphs 1 through37, inclusive, hereinabove, as if fully set forth here at, *seriatim*.

75. Within the last four years, Defendants have become indebted to Pro-Com for the masks sold and delivered to Defendants, who then agreed to pay the sum of $6,911,310for the masks.

76. The whole of the amount due has not been paid by Defendants, although demand therefor has been made, and there is now due and owing from Defendants to Pro-Com the sum of $1,863,270, together with interest accruing at 29% per annum on late and unmade payments.

**NINTH CLAIM FOR RELIEF**

**(Goods Sold and Delivered against Optimal Santé)**

77. Pro-Com refers to and incorporates paragraphs 1 through37, inclusive, hereinabove, as if fully set forth here at, *seriatim*.

78. Within the last four years,Optimal Santéhas become indebted to Pro-Com for the N95 Masks sold and delivered to Optimal Santé, who then agreed to pay the sum of $2,250,000for the masks.

79. The whole of the amount due has not been paid by Defendants, although demand therefor has been made, and there is now due and owing from Defendants to Pro-Com the sum of $1,125,000.

WHEREFORE, Pro-Com prays for judgment against Defendants, and each of them, as follows:

1. General damages according to proof;

2. Special damages according to proof;

3. Pre-judgment interest thereon;

4. For costs of suit herein, including but not limited to attorney's fees pursuant to contract and statute; and

5. For such other and further relief as the Court deems just and proper.

Dated: September 11, 2020 Law Offices of James H. Park, P.C.

By: /s/ James H. Park
James H. Park
Attorney for Plaintiff
Pro-Com Products, Inc.
a California corporation